Carmon KENNEDY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00159–CR.

Court of Appeals of Texas,
Texarkana.

Submitted July 26, 2005.

Decided Dec. 7, 2005.

Rehearing Overruled Jan. 11, 2006.

Stephanie Potter Black, Texarkana, for appellant.

Adam O. Fellows, Nicole Habersang, Asst. Dist. Atty's, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Carmon Kennedy was indicted on one count of indecency with a child by exposure, four counts of indecency with a child by contact, and four counts of aggravated sexual assault of a child. He entered pleas of not guilty before a jury on all counts. The jury returned verdicts of guilty on all nine counts and assessed punishment at twelve years' imprisonment for each of the five counts of indecency with a child, sixty years' imprisonment for two of the aggravated sexual assault convictions, and ninety-nine years' imprisonment for the other two aggravated sexual assault convictions. The trial court sentenced Kennedy accordingly, ordering that the nine sentences run concurrently. Kennedy now appeals the trial court's judgment, contending the trial court abused its discretion in excluding evidence of specific instances of the complainant's past sexual behavior and in excluding hearsay concerning what the complainant had said to her friends about needing to testify to the same stories in court. We affirm.

## I. Factual Background

### A. A.C.'s Account

In 1999, thirty-one-year-old Kennedy moved in with the family of eleven-year-old A.C. in Bowie County. According to A.C., a couple of months after he moved in, Kennedy began to come into her room at night and sexually abuse her. The abuse began with back rubs under her shirt during which he would move to her front, fondling her breasts. He then began to "mess[ ] with [her] privates," digitally penetrating her. A.C.'s family moved to Georgia for a brief period and then returned to Bowie County. Kennedy moved back in with the family and began to masturbate in front of A.C. and would place her hand on his penis to masturbate him. Then the abuse progressed to oral sex and, finally, intercourse. A.C. testified Kennedy would ejaculate on her abdomen and clean her up with a towel. She testified the abuse was frequent over the years, progressing to three or four nights a week. She testified he did not say anything to her during the abuse. After he was done, he would kiss her on the forehead and tell A.C. that he loved her. Finally, A.C. told a friend, who persuaded A.C. to talk to the friend's mother. The friend's mother talked A.C. into discussing the abuse with a pastor and, later, disclosing the abuse to the police.

### B. State's Medical Testimony

The trial court admitted the testimony of nurse Becky Francis. She testified that, during her examination of A.C., she noted a well-healed laceration in A.C.'s hymen and that this well-healed tear was consistent with A.C.'s account of abuse.

### C. Kennedy's Contentions

Kennedy complains of the trial court's exclusion of certain evidence that, Kennedy argues, would rebut or explain the

State's medical evidence. According to Kennedy, the trial court also excluded evidence that would demonstrate A.C. had a motive to fabricate the allegations of abuse. Kennedy relies on Rules 412 and 803(24) to support his positions. *See* Tex.R. Evid. 412, 803(24).

## II. Exclusion of Evidence Concerning Past Sexual Activity

### A. Standard of Review

 We review a trial court's decision to exclude evidence for an abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 378 (Tex.Crim.App.1990). A trial court abuses its discretion when its decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Shaw v. State*, 122 S.W.3d 358, 363 (Tex.App.-Texarkana 2003, no pet.).

### B. Evidence of Past Sexual Activity: Rule 412 Requirements

1. We note that, regarding Kennedy's complaints concerning Rule 412, he only raises issues relating to the four convictions for aggravated sexual assault of a child. By Rule 412's express language, these issues do not concern the indecency with a child convictions.

2. Rule 412 further provides:

 (c) **Procedure for Offering Evidence.** If the defendant proposes to introduce any documentary evidence or to ask any question, either by direct examination or cross-examination of any witness, concerning specific instances of the alleged victim's past sexual behavior, the defendant must inform the court out of the hearing of the jury prior to introducing any such evidence or asking any such question. After this notice, the court shall conduct an in camera hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under paragraph (b) of this rule. The court shall determine what evi-

Rule 412 of the Rules of Evidence provides the following limitation on the admissibility of a victim's past sexual conduct:

In a prosecution for sexual assault or aggravated sexual assault,[1] or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:

(1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule;[2]

(2) it is evidence:

(A) that is necessary to rebut or explain scientific or medical evidence offered by the State;

(B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;

(C) that relates to the motive or bias of the alleged victim;

(D) is admissible under Rule 609;[3] or

dence is admissible and shall accordingly limit the questioning. The defendant shall not go outside these limits or refer to any evidence ruled inadmissible in camera without prior approval of the court without the presence of the jury.

 (d) **Record Sealed.** The court shall seal the record of the in camera hearing required in paragraph (c) of this rule for delivery to the appellate court in the event of an appeal.

3. Rule 609 provides, in part:

 For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

 Tex.R. Evid. 609(a).

(E) that is constitutionally required to be admitted; and

(3) its probative value outweighs the danger of unfair prejudice.

Tex.R. Evid. 412(b). Kennedy's contentions focus on subsections (2)(A) and (2)(C), so we will concentrate our discussion on those subsections.

## C. Evidence of Thirty–Three Sexual Partners

■ Kennedy contends the trial court abused its discretion by excluding the following testimony from Raschella Lampkins, a former friend of A.C.: "And [A.C.] just—I said, what about you, and she said, well, I lost [my virginity] when I was thirteen, and I've had sex with thirty-three guys. That's what she told me." Lampkins testified A.C. did not specify a time frame during which she had these thirty-three partners. A.C. denied ever having made these statements to Lampkins.

### 1. Kennedy's Argument

Kennedy contends this testimony would rebut or explain the State's medical testimony from Francis that the well-healed tears in A.C.'s hymen are consistent with abuse. Kennedy relies on this Court's decision in *Reynolds v. State*, 890 S.W.2d 156 (Tex.App.-Texarkana 1994, no pet.), to support his contention the trial court abused its discretion by excluding such evidence. In *Reynolds*, the state introduced medical evidence that the victim's vaginal opening appeared to be slightly stretched. *Id.* at 157. The state's medical report also included the victim's denial of any other sexual abuse or consensual sexual activity. *Id.* Employing Rule 412, Reynolds sought to question the complainant regarding three prior sexual partners and to introduce a letter from the complainant to her grandmother documenting years of sexual abuse by another man. *Id.* Reynolds argued that this evidence would rebut or

explain the state's medical evidence supporting the victim's allegations. *Id.*

Concluding that the excluded evidence would explain the state's evidence of vaginal trauma and would rebut the complainant's denial of any prior sexual abuse or activity, this Court held that the trial court did abuse its discretion by excluding this evidence under Rule 412 and that the error was not harmless. *See id.* at 157–58. This Court reversed the conviction and remanded the case for a new trial. *Id.* at 158.

Further, in *Hood v. State*, 944 S.W.2d 743 (Tex.App.-Amarillo 1997, no pet.), the state introduced medical evidence that established two, well-healed tears in the complainant's hymen. *Id.* at 745. The tears appeared to have occurred "sixty days or more" before examination. *Id.* The tears, according to the state's witness, demonstrated the complainant's vagina had been penetrated. *Id.* On cross-examination, defense counsel learned the witness had inquired into the complainant's sexual history. *Id.* Counsel then sought, but was denied, permission from the trial court to cross-examine the state's witness on whether the complainant had disclosed any prior sexual activity. *Id.*

Outside the presence of the jury, defense counsel made his offer of proof, eliciting testimony from the state's witness that the complainant "thought that she had" sexual intercourse. *Id.* The court concluded that any risk of prejudice contemplated by Rule 412 was already interjected into the evidence before the jury through evidence of the complainant's pregnancy at age fifteen and her unmarried status. *Id.* at 746. Additionally, the state had relied heavily on the evidence of vaginal tears to prove Hood had penetrated the complainant's vagina. *Id.* Relying on *Reynolds* and discounting the element of age into the Rule 412 balancing test, the

court held that the prejudicial effect of the excluded evidence did not outweigh the probative value the evidence would offer and that the exclusion of such evidence was harmful error. *Id.* at 747.

In *Miles v. State,* 61 S.W.3d 682, 683–84 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd), the state introduced medical evidence there were a number of healed tears to the complainant's hymen. While the doctor was unable to conclude exactly what caused the tears and when they occurred, she did testify the tears were more than a few days old, were of the type that almost never occur in cases of oral sex or fondling, and were most likely the result of penile penetration. *Id.* at 684. The doctor further testified the tears were consistent with the account the complainant told to her. *Id.*

Defense counsel sought permission to question the complainant regarding statements she had made to her cousin to the effect that she had sexual intercourse with an individual named Timmy. *Id.* at 685. During the trial court's in camera investigation, the complainant denied having had sex with Timmy, but admitted she had told her cousin otherwise. *Id.* After the trial court elicited the complainant's statement that she had lied to her cousin and that the appellant was the only person with whom she had had intercourse at the time of her examination, the trial court determined the evidence would be more prejudicial than probative and disallowed any questioning on the issue of past sexual conduct with Timmy. *Id.* Defense counsel then made a bill of exceptions containing the testimony from two of the complainant's cousins that the complainant had had sexual intercourse with Timmy. *Id.*

The First Court of Appeals relied on the rationale in *Reynolds* and *Hood* to con-clude that the excluded evidence did fall within the category of evidence that would "explain or rebut" the state's medical evidence. Tex.R. Evid. 412(b)(2)(A); *Miles,* 61 S.W.3d at 686. The court noted the cousins' testimony would likely be inadmissible hearsay falling within the *Burks*[4] holding. *Miles,* 61 S.W.3d at 687. The complainant's own testimony would not be inadmissible hearsay, however. So, the court went on to weigh the probative value of such evidence against its prejudicial effect. *Id.* Pointing to the complainant's admission that she lied to her cousin about having had sex with Timmy, the court concluded the jury should have had the right to weigh the complainant's credibility against that of Miles. For this reason, the court held the trial court abused its discretion by determining the evidence was more prejudicial than probative. *Id.*

**2. Excluded Testimony Does Not Rebut or Explain Medical Evidence**

Without evidence regarding when these alleged sexual encounters occurred, we cannot conclude this excluded evidence explained the State's medical evidence. Unlike the letter in *Reynolds* in which the complainant described several years of sexual abuse by another man, Lampkins' testimony fails to explain or rebut the State's medical evidence. We note A.C. denied having had this conversation with Lampkins, thereby distinguishing this case from *Miles,* in which the complainant admitted having made the statement regarding prior sexual activity. Even taking this testimony as true, we still cannot determine whether the alleged thirty-three partners may have been had after the examination revealing the injuries to A.C.'s hymen, in which case, the evidence would be of no value. By contrast, in *Reynolds,* the letter is authored by the complainant

---

4. *Burks v. State,* 40 S.W.3d 698, 701 (Tex. App.-Waco 2001, pet. ref'd).

herself and offers a more concrete time line with which to gauge whether the testimony actually explains the state's evidence. Here, we do not have such information. The trial court did not abuse its discretion by excluding this evidence.

### 3. Excluded Evidence Constitutes Inadmissible Hearsay

■ The Waco court addressed a similar issue concerning Rule 412 with a different approach in *Burks*, 40 S.W.3d 698. In defense of allegations of sexual assault and indecency with a child, the defendant sought to admit a note by the complainant that described a prior sexual encounter with a person other than the defendant. *Id.* at 699. The court held that the note was inadmissible hearsay and that Rule 412 could not be used as a vehicle to gain admission of otherwise inadmissible evidence. *Id.* at 701. We agree and conclude Kennedy cannot use Rule 412 to get otherwise inadmissible hearsay before the jury. Even if the trial court had been incorrect in its application of Rule 412, we would uphold its ruling on this alternate theory. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

### D. Testimony Regarding Alleged Sexual Activity Between A.C. and C.M.

In the in camera investigation, Lampkins testified to the following: "And then I got home and I asked her about it, and she said, well, he never raped me—the first time, she said, he never raped me; he came in and caught me in the bed with [C.M.], and he made [C.M.] leave." Later, outside the presence of the jury, Lampkins initially testified Kennedy did see A.C. and C.M. having sex. A short time later, she clarified, testifying that Kennedy "caught [C.M.] pulling up his pants." Kennedy contends the exclusion of this testimony was error.

Kennedy also complains of the trial court's exclusion of Kennedy's own version of events on this matter. While the trial court allowed Kennedy to testify to the alleged threat A.C. made to him as retaliation against his disciplinary measures, the trial court disallowed any reference to Kennedy allegedly catching A.C. and C.M. in some kind of sexual activity. Rather, he testified A.C. threatened "to tell everyone that I had been messing with her" because Kennedy intended to inform A.C.'s mother about a disciplinary problem.

### 1. No Offer of Proof as to What Kennedy's Testimony Would Have Been

■ While we can determine the general nature of the excluded testimony from the preliminary discussions among the attorneys and the trial court, the record does not contain an offer of proof from which we can analyze the excluded testimony in detail. Kennedy may have testified that he caught A.C. and C.M. having sex. Or he may have testified, as did Lampkins, that he only saw C.M. pull his pants up. To preserve for review a ruling on evidence, the record must contain a timely, specific objection and, if the ruling excludes evidence, an offer of proof.[5] *See* TEX.R. EVID. 103(a); TEX.R.APP. P. 33.1(a). Simply put, we cannot determine the issue; any error in excluding this testimony was not preserved for our review. We therefore will limit further analysis to the exclusion of Lampkins' testimony regarding the incident.

### 2. Probably Not Evidence of Victim's Past Sexual Behavior

---

**5.** Rule 103 does allow a proponent of the evidence in question to forego an offer of proof when the substance of the excluded evidence was apparent from the context. TEX.R. EVID. 103(a)(2). Here, we maintain, the precise content of the excluded testimony was not apparent.

■ First, because Lampkins' testimony consists of speculation that A.C. and C.M. engaged in some sort of sexual activity, we question whether this evidence qualifies as a specific instance of "past sexual behavior" of A.C. as contemplated by Rule 412. Beyond that, it is difficult to conclude that such speculative evidence rebuts or explains the State's medical evidence. On its face, evidence C.M. was pulling up his pants does not necessarily explain the tears in A.C.'s hymen. The excluded testimony here resembles the testimony at issue in *Rankin* in which "witnesses made only vague references to the complainant's alleged sexual activity." *Rankin v. State,* 821 S.W.2d 230, 233 (Tex.App.-Houston [14th Dist.] 1991, no pet.).

### 3. Evidence More Prejudicial Than Probative

■ Even taking this evidence at its most damaging, we still conclude that the prejudicial effect of the evidence outweighs the probative value it would lend. The implication of Lampkins' testimony might shed some light on a motive to fabricate allegations against Kennedy, but only minimally more so than did Kennedy's own testimony regarding the threat without reference to sexual activity. The excluded testimony would add only the element of speculated past sexual activity with C.M., i.e., the jury got to hear Kennedy's testimony regarding the alleged threat A.C. issued to him in response to disciplinary action against her. Therefore, any probative value of the excluded testimony concerning suspected sexual activity between A.C. and C.M. is very limited; its main effect would be prejudicial by intimating at past sexual activity of A.C. The trial court did not abuse its discretion by excluding the testimony suggesting past sexual activ-

ity between A.C. and C.M.[6] We overrule Kennedy's contention.

### III. Exclusion of Hearsay Evidence

### A. Testimony from Lampkins Concerning "Get[ting] Stories Straight"

■ Kennedy also complains the trial court abused its discretion by excluding evidence from Lampkins that A.C. encouraged her friends to "get [their] stories straight." Outside the presence of the jury, Lampkins testified A.C. told Lampkins and two other friends "that[,] in case we all had to testify at court[,] that we all needed to have the same story." Lampkins continued, testifying A.C. "told us our stories had to be that when he walked in, after he made that guy leave, that he started touching her. She never said that they had sexual intercourse. She just said that he touched her, that's it. That's what she told me." Lampkins explained A.C. then "told us that we were going to have to say that he touched her so she wouldn't get in trouble." Lampkins repeated much of this testimony during the trial court's in camera investigation regarding related evidence. Testimony to this effect, Kennedy argues, is admissible as a statement against interest and, as such, an exception to the rule excluding hearsay. *See* Tex.R. Evid. 803(24).

### B. Statement Against Interest Exception to Hearsay

■ The Rules of Evidence provide that a statement against interest falls outside the rule excluding hearsay and defines a statement against interest as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so

---

6. Again, with respect to the excluded testimony from Lampkins, the evidence constitutes inadmissible hearsay the exclusion of which

Rule 412 cannot overcome. *Burks,* 40 S.W.3d at 699.

far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

TEX.R. EVID. 803(24). On appeal, Kennedy limits his analysis to that portion of Rule 803(24) dealing with a statement against penal interest.[7] The State, likewise, limits its response to only that aspect of Rule 803(24) and correctly notes that any determination regarding the admissibility of a statement against penal interest in accordance with Rule 803(24) requires a two-step inquiry. *See Woods v. State,* 152 S.W.3d 105, 113 (Tex.Crim.App.2004), *cert. denied,* ── U.S. ──, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005). First, the trial court must determine whether the statement in question tends to expose the declarant to criminal liability. *Bingham v. State,* 987 S.W.2d 54, 57 (Tex.Crim.App.1999). Second, the trial court must determine if there are corroborating circumstances that clearly indicate the trustworthiness of the statement. *Id.*

▇▇▇▇ Whether a statement is, in fact, a statement against interest under Rule 803(24) must be determined from the circumstances of each case. *Drone v. State,* 906 S.W.2d 608, 612 (Tex.App.-Austin 1995, pet. ref'd). We review a trial court's decision to admit or exclude a hearsay statement under Rule 803(24) for an abuse of discretion. *See Bingham,* 987 S.W.2d at 57.

**C. Statement Against Penal Interest Not Applicable**

After reviewing A.C.'s alleged statements, we conclude the record does not demonstrate that the statements would ex-

---

**7.** Rule 803(24) embraces more than just whether a statement is one against the declarant's *penal* interest. Other Rule 803(24) issues were raised before the trial court (mischaracterized by the State as "the civil part" of the rule) not addressed in this appeal. We acknowledge we are to liberally construe an appellant's point of error to cover any "subsidiary question that is fairly included." TEX. R.APP. P. 38.1(e). We note, however, that the only reference in Kennedy's brief to any other aspects of the rule appear in his quote of Rule 803(24) in its entirety. Beyond that, he does not mention or discuss any aspect of invalidating the declarant's claim, or of a statement against social interest, and he failed to cite to any authority analyzing those other aspects of Rule 803(24). His entire argument focuses on analysis of the excluded testimony as a statement against A.C.'s penal interest. We therefore expressly limit our holding to the portion of Rule 803(24) addressing the testimony in question as a statement against penal interest.

The dissent contends Kennedy preserved his reliance on the other aspects of Rule 803(24) by citing the rule, quoting the rule in its entirety, and by citing a case that references all three interests expressed in the rule. A reviewing court "should consider the parties' *arguments* supporting each point of error and not merely the wording of the points." *State v. Garland,* 963 S.W.2d 95, 101 (Tex. App.-Austin 1998, pet. denied) (quoting *Anderson v. Gilbert,* 897 S.W.2d 783, 784 (Tex.1995)) (emphasis added). A point that is merely an abstract proposition of law is too general and indefinite to merit appellate review. *Pac. Employers Ins. Co. v. Dayton,* 958 S.W.2d 452, 455 (Tex.App.-Fort Worth 1997, pet. denied). And merely citing a case discussing all aspects of a rule of evidence, but arguing only one aspect in the brief, does not put the other side—or the reviewing court—on notice that the citing party is relying on all aspects of the rule. There was nothing in Kennedy's less than two pages of discussion under this point to put the State—or this Court—on notice he was relying on any aspect of Rule 803(24) other than statements against penal interests.

pose A.C. to criminal liability in the manner contemplated by Rule 803(24). Here, Kennedy argues that A.C.'s admission to her friends she had been lying is perjury and subordination of perjury: "Perjury subjects the declarant to criminal liabilities and is therefore a statement against her interest." The offense of perjury, however, as described by the Penal Code, requires that the statement at issue be made under oath. *See* Tex. Pen.Code Ann. § 37.02(a)(1) (Vernon 2003). Here, the statement is one A.C. allegedly made to her friends at one of their homes. The context of these statements clearly indicates they were not made under oath. Of course, A.C.'s testimony regarding the abuse was made under oath. However, this is not the statement sought to be admitted and, thus, cannot be the focus of our analysis. The statement at issue—the one allegedly made to A.C.'s friends—does not subject A.C. to criminal liability for perjury. The statement against penal interest exception, therefore, is inapplicable.

Additionally, we find nothing in the record in the way of corroborating circumstances as plainly required by Rule 803(24). Kennedy points to his own testimony about finding A.C. in bed with a boy and the accompanying threats to accuse him as circumstances that corroborate the excluded testimony. We note this is previously excluded testimony rather than corroborating circumstances. We have found no authority that would permit consideration of such testimony as qualifying corroborating circumstances under Rule 803(24). Thus, even if the first prong of the statement against penal interest exception were somehow satisfied here, Kennedy's argument would still fail because of the absence of corroborating circumstances. As presented to us on appeal, the trial court's exclusion of Lampkins' testimony as a statement against penal interest

was not an abuse of discretion. We overrule Kennedy's third point of error.

## IV. Conclusion

Having overruled all of Kennedy's contentions regarding the trial court's exclusion of testimony under Tex.R. Evid. 412 and 803(24), we affirm the trial court's judgment.

Dissenting Opinion by Justice CARTER.

Kennedy offered evidence from Raschella Lampkins that the complaining witness told her and two other friends that they needed to have the same story, that they were going to have to say Kennedy touched A.C. so A.C. would not get in trouble, and that A.C. told them what their stories had to be concerning Kennedy touching her. The majority affirms the exclusion of this evidence, to which I dissent.

The majority opinion reaches its conclusion because "Kennedy limits his analysis to that portion of Rule 803(24) dealing with a statement against penal interest." Therefore, the majority does not analyze whether this evidence was admissible based on other portions of Tex.R. Evid. 803(24).

I believe the evidence was admissible as provided by Rule 803(24) as a statement against the declarant's social interest and as a statement invalidating a claim by the witness. This issue was clearly presented to the trial court—the evidence was offered by Kennedy, the State objected, based on hearsay, and Kennedy countered that the evidence was admissible as a statement against interest as set out in Tex.R. Evid. 803(24). I believe the issue has been sufficiently briefed in this Court.

In the brief submitted to this Court, Kennedy presents an issue that the trial court erred by not admitting evidence under Rule 803(24). In the summary of the argument, Kennedy states the court erred in finding that the testimony did not fall under the exception to hearsay for a statement against interest under Rule 803(24). Kennedy argues on appeal that such denial was error and the evidence should have been allowed to be presented to the jury. In the argument section of the brief, Kennedy repeats the issue and quotes in its entirety Texas Rule of Evidence 803(24). Kennedy then cites a case as authority, *Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex.1986), which involves a statement embodying all three interests expressed in the rule (pecuniary, penal, and social). I believe that Kennedy has complied with the rule so that this issue is properly before the Court and should be addressed. Texas Rule of Appellate Procedure 38(h) requires that the brief contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R.APP. P. 38(h). Here, the contention made is that the statement is an exception to the hearsay rule by virtue of the exceptions set out in Rule 803(24). The rule in its entirety is quoted as the authority, and a citation is given to a case and to the record. The briefing rules found in the Texas Rules of Appellate Procedure "are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." TEX. R.APP. P. 38.9. The rules are to be construed liberally, and substantial compliance with the rules is sufficient unless the

court determines the rules have been flagrantly violated (in which case the court may require further briefing), or that the case has not been properly presented, or that the law and authorities have not been properly cited (in which case the court may postpone submission, require additional briefing, or make any other necessary order for a satisfactory submission of the case). TEX.R.APP. P. 38.9. Kennedy's brief does not violate Rule 38.9 and substantially complies with the Texas Rules of Appellate Procedure.[8] Therefore, I will analyze the issues fairly raised in Kennedy's brief.

## I. EXCLUSION OF HEARSAY EVIDENCE

### A. Testimony from Lampkins Concerning "Get[ting] Stories Straight"

Kennedy complains the trial court abused its discretion by excluding evidence from Lampkins that A.C. encouraged her friends to "get [their] stories straight." Outside the presence of the jury, Lampkins testified A.C. told Lampkins and two other friends "that[,] in case we all had to testify at court[,] that we all needed to have the same story." Lampkins continued, testifying A.C. "told us our stories had to be that when he walked in, after he made that guy leave, that he started touching her. She never said that they had sexual intercourse. She just said that he touched her, that's it. That's what she told me." Lampkins explained A.C. then "told us that we were going to have to say that he touched her so she wouldn't get in trouble." Lampkins repeated much of this testimony during the trial court's in cam-

---

**8.** The majority opinion suggests Kennedy's brief did not put the State or this Court on notice Kennedy was relying on all aspects of Rule 803(24). Of course, I believe that both the Court and the State were properly notified as the rules require. However, if the concern

is that the State should have further opportunity to respond, we could authorize supplemental briefing by the State "whenever justice requires, on whatever reasonable terms the court may prescribe." TEX.R.APP. P. 38.7.

era investigation regarding related evidence. Testimony to this effect, Kennedy argues, is admissible as a statement against interest and, as such, an exception to the rule excluding hearsay. *See* TEX.R. EVID. 803(24).

**B. Statement Against Interest Exception to Hearsay**

The Texas Rules of Evidence provide that a statement against interest falls outside the rule excluding hearsay and defines a statement against interest as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

TEX.R. EVID. 803(24). The State limits its response to only one aspect of Rule 803(24) by pointing to the rule that any determination regarding the admissibility of a statement against penal interest in accordance with Rule 803(24) requires a two-step inquiry. *See Woods v. State*, 152 S.W.3d 105, 113 (Tex.Crim.App.2004), *cert. denied*, ––– U.S. –––, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005). However, Rule 803(24) requires much more analysis than just whether a statement is one against the declarant's penal interest.

Whether a statement is, in fact, a statement against interest under Rule 803(24) must be determined from the circumstances of each case. *Drone v. State*, 906 S.W.2d 608, 612 (Tex.App.-Austin 1995,

pet. ref'd). We review a trial court's decision to admit or exclude a hearsay statement under Rule 803(24) for an abuse of discretion. *See Bingham v. State*, 987 S.W.2d 54, 57 (Tex.Crim.App.1999).

**1. Invalidating a Claim by Declarant**

Initially, the language involving the invalidation of the declarant's claim against another seems to address the statement excluded here. Although no Texas caselaw has developed the application of the language "render invalid a claim by the declarant against another" in these circumstances, we note that the alleged statement, if believed by the jury, would tend to invalidate A.C.'s claim of abuse. So, while there is no authority delineating the boundaries of this aspect of Rule 803(24), I conclude that Lampkins's testimony would be admissible in that A.C.'s statement would have rendered A.C.'s claim against Kennedy invalid.

**2. Statement Against Social Interest**

To be admitted on the basis it would subject the declarant to disgrace, the statement must be "in the context of the declarant's social interests" and must be against such interests "at the time it was made." *Burks v. State*, 40 S.W.3d 698, 701 (Tex.App.-Waco 2001, pet. ref'd) (citing *Owens v. State*, 916 S.W.2d 713, 718 (Tex.App.-Waco 1996, no pet.); *Bell v. State*, 877 S.W.2d 21, 24 n. 2 (Tex.App.-Dallas 1994, pet. ref'd)).

There appears to be a rather narrow application of Rule 803(24)'s statement against the "social interest" exception. *See Sills v. State*, 846 S.W.2d 392, 397 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd). *Sills* describes the types of facts which would give rise to the application of this facet of Rule 803(24):

> To be admissible, a statement against interest that makes the declarant the object of hatred, ridicule, or disgrace

must be in the context of the declarant's social interests, such as a confession by a small-town minister of homosexual conduct, *Purtell v. State*, 761 S.W.2d 360, 369 (Tex.Crim.App.1988), ... or a statement by a husband that he was responsible for an automobile accident whereby his wife became a paraplegic. *Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex.1986).

*Sills*, 846 S.W.2d at 397 (some citations omitted); *see also Franklin v. State*, 992 S.W.2d 698, 706 (Tex.App.-Texarkana 1999, pet. ref'd).

A type of statement that qualifies as a statement against social interest is presented when an appellant convicted of sexual assault of a child complained of the trial court's admission of hearsay statements in which the fourteen-year-old complainant confessed to her mother to having had sexual relations with the twenty-six-year-old appellant. *See Glover v. State*, 102 S.W.3d 754, 766 (Tex.App.-Texarkana 2002, pet. ref'd). She made the statements reluctantly and only did so when confronted by the possibility that her mother already "knew everything," subjecting the complainant to punishment if she were to be untruthful. *Id.* This Court reasoned that "a reasonable person in [the complainant]'s position would have known that her statements would subject her to disgrace in the eyes of her mother." *Id.* Therefore, the trial court did not abuse its discretion by admitting the hearsay statements.

To illustrate what evidence does not qualify as a statement against social interest, the Waco court's opinion in *Burks* should be considered. There, the complainant's note to her friend boasting about a sexual encounter with a boy was not admissible in an indecency and sexual assault of a child case. *Burks*, 40 S.W.3d at 701. The note did not qualify as a statement against social interest because it was not of a nature that would have subjected the declarant/complainant to "hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true." *Id.*

Here, on the other hand, evidence that A.C. attempted to influence her friends to testify Kennedy touched her, so she would not get in trouble, runs directly against A.C.'s social interests. Her family, friends, and community would likely treat her with varying degrees and types of hostility, distrust, and resentment if it were revealed that she had lied about the abuse. Common sense and social norms suggest A.C. would have been subject to "disgrace, ridicule, or hatred" for having falsely accused a family friend of sexual assault. So the statement more closely resembles those deemed admissible in *Glover* and *Purtell* than it does the inadmissible statement in *Burks*.

Outside the presence of the jury, A.C. denied ever having made this statement. Likewise, other friends of A.C. testified outside the presence of the jury that A.C. did not make such a statement regarding "get[ting] [their] stories straight." So, there is a conflict in the evidence. Such conflicts and related issues concerning credibility of witnesses fall squarely within the traditional purview of the jury. *See Lester v. State*, 120 S.W.3d 897, 902 (Tex. App.-Texarkana 2003, no pet.). The initial determination of trustworthiness is an issue of law, while the ultimate weight to be given to the testimony will be decided by the jury.[9] I believe the court erred in

---

9. The jury, as trier of fact, is the ultimate judge of the credibility of the witnesses and the weight to be given their testimony. *See* TEX CODE CRIM. PROC. ANN. art. 38.04 (Vernon

excluding the testimony of Lampkins on this subject.

## II. Harm Analysis

Where, as here, erroneous exclusion of evidence is the result of misapplication of the Texas Rules of Evidence and its admission is not claimed to be required by the United States or Texas Constitutions, we analyze harm under Texas Rule of Evidence 103(a), which provides that error may not be predicated on a ruling that admits or excludes evidence unless a "substantial right" of the party is affected. TEX.R. EVID. 103(a); *Potier v. State*, 68 S.W.3d 657, 666 (Tex.Crim.App.2002). The standard is the same as that under Rule 44.2(b). TEX.R.APP. P. 44.2(b); *Potier*, 68 S.W.3d at 666. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App.2001); *Lester*, 120 S.W.3d at 903. A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has a fair assurance the error did not influence the jury, or had but a slight effect. *See* TEX. R.APP. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998) (citing *King v. State*, 953 S.W.2d 266 (Tex. Crim.App.1997)).

The excluded evidence, if believed by the jury, would seriously call into question the testimony of the complaining witness. A.C. was the primary witness to testify as to the guilt of Kennedy and, unless her testimony was believed, there was no direct evidence of Kennedy's guilt. The excluded testimony went to the heart of the

case—the credibility and believability of the only witness who testified Kennedy committed sexual assault. The excluded testimony attacked the credibility of the witness on the most important issue in the case, not some collateral matter or some detail of little importance. I cannot say with fair assurance that the erroneous exclusion of these statements of the complaining witness did not affect Kennedy's substantial rights.

Under these circumstances, I believe we must reverse the case for further proceedings. I respectfully dissent.

1979). The jury is entitled to accept or reject all or any part of the testimony by the witnesses for the State or the accused. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App. 1987); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *Miller v. State*, 909 S.W.2d 586, 593 (Tex.App.-Austin 1995, no pet.).