# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00529-CR
## NO. 03-17-00530-CR

**James Lee Vanhoose, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NOS. CR2015-587 & CR2015-586, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In trial court cause number CR2015-586, a jury convicted appellant James Lee Vanhoose of the offenses of continuous sexual abuse of a child and indecency with a child by contact and assessed punishment at 50 and 20 years' imprisonment, respectively, for each offense. *See* Tex. Penal Code §§ 21.02, 21.11(a)(1). In trial court cause number CR2015-587, the jury convicted Vanhoose of two counts of the offense of obstruction or retaliation and assessed punishment at two years' imprisonment for each count.[1] *See id*. § 36.06(c). On appeal, Vanhoose asserts that the district court abused its discretion in excluding defensive evidence related to the sexual abuse allegations.[2] We will affirm the judgments of conviction.

---

[1] The causes were consolidated in the court below for trial purposes.

[2] In his brief, Vanhoose concedes that his issue on appeal "affect[s] only the sexual [abuse] accusations." Thus, he does not challenge his convictions in CR2015-587.

# BACKGROUND

The complainant in the case, C.L., was Vanhoose's stepdaughter. C.L., who was fourteen years old at the time of trial, testified that when she was seven or eight years old, Vanhoose began sexually abusing her. The abuse, which occurred over a period of approximately five years, included multiple incidents of Vanhoose penetrating C.L.'s sexual organ with his sexual organ, touching her breasts and genitals, and performing oral sex on her. In 2015, when C.L. was twelve years old, she told her best friend, E.M., E.M.'s sister, and E.M.'s mother that Vanhoose was sexually abusing her. Shortly thereafter, the abuse was reported to Child Protective Services (CPS). C.L. was subsequently interviewed by Megan Smith, a forensic interviewer with the Children's Advocacy Center of Comal County, and she provided Smith with a detailed description of the abuse. C.L. testified that, shortly after CPS became involved in the case, Vanhoose "apologized for everything that he had done to me in previous years and he said he never meant to hurt me, never meant for it to be this way." Vanhoose subsequently left Texas and was later arrested in Arizona. Following his arrest, Vanhoose provided a statement to the police in which he denied the abuse but claimed that C.L. would sleep in his bed on multiple occasions and "grind on him" while he slept. This "grinding," as described by Vanhoose, was sexual in nature and included an incident in which C.L. was not wearing underwear and was on top of Vanhoose while his sexual organ was exposed to her. Vanhoose claimed that he was "drunk" when these incidents occurred.

After considering this and other evidence, which we discuss in more detail below, the jury convicted Vanhoose of the charged offenses and assessed punishment as noted above. The district court rendered judgment on the jury's verdicts. These appeals followed.

2

**DISCUSSION**

During trial, the district court excluded evidence that Vanhoose argued would be favorable to his defense, specifically: (1) testimony tending to show that Vanhoose had prohibited C.L. from visiting the homes of her best friend, E.M., and an adult neighbor, Daniel Rios; (2) text messages exchanged between C.L. and Rios; and (3) text messages that were exchanged between C.L. and her friends. In his sole issue on appeal, Vanhoose asserts that the district court abused its discretion in excluding this evidence.

**Standard of Review**

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless it "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 297.

3

**Evidence of restrictions that Vanhoose had placed on C.L.**

C.L.'s best friend, E.M., and her best friend's sister, M.M., lived in the same neighborhood as C.L. Defense counsel presented evidence tending to show that C.L.'s mother did not want C.L. spending time with the girls or their family, and counsel attempted to present similar evidence tending to show that Vanhoose had forbidden C.L. from visiting E.M.'s home and also the home of Daniel Rios, an adult neighbor. However, when defense counsel attempted to ask C.L., "What was [Vanhoose's] opinion of you going over" to the girls' house, the State objected on the basis of hearsay. In response, defense counsel asserted that the testimony was not offered to prove the truth of the matter asserted but to show "the relationship between [C.L.] and [Vanhoose] at the time all of this was occurring." The district court disagreed, explaining to defense counsel, "That may be the intent as to where the question is intended to go and what it's supposed to represent, but it's still being offered for the purpose of him telling her not to go, so it's the truth of the matter being asserted by the statement." The district court then sustained the State's objection to the evidence. Later, defense counsel also attempted to ask C.L., "Did [Vanhoose] ever tell you to stay away from [Rios's] house?" The State again objected on the basis of hearsay, and the district court again sustained the objection.

We cannot conclude that the exclusion of this testimony as hearsay was an abuse of discretion. Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). "Matter asserted" means "any matter a declarant explicitly asserts" and "any matter implied by a statement,

4

if the probative value of the statement as offered flows from the declarant's belief about the matter." Tex. R. Evid. 801(c).

Here, the "matter asserted" by the defense was that Vanhoose had forbidden C.L. from visiting E.M. and Rios. Defense counsel was attempting to elicit testimony that Vanhoose had made statements to that effect. Thus, it would not have been outside the zone of reasonable disagreement for the district court to conclude that C.L.'s testimony was being offered to prove the truth of the matter asserted—that Vanhoose had forbidden C.L. from visiting E.M. and Rios. For that reason, the district court did not abuse its discretion in excluding the testimony as hearsay.[3] *See* Tex. R. Evid. 801, 802.

**Text messages exchanged between C.L. and Rios**

Vanhoose also offered into evidence Defense Exhibit 2, a series of text messages that were exchanged between C.L. and Rios, her adult next-door neighbor, in March and April 2015, shortly before C.L. made her outcry. Vanhoose claimed that the texts were necessary for his defense and admissible to show that there might have been "a possible alternate instigator or offender" in

---

[3]  For the first time on appeal, Vanhoose asserts that even if C.L.'s testimony was inadmissible hearsay, its exclusion violated his constitutional rights to present a complete defense and confront the witnesses against him. *See* U.S. Const. amend. VI; *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). However, Vanhoose failed to raise this complaint in the court below. The Court of Criminal Appeals has held that to preserve error on constitutional grounds, the defendant must make a sufficiently specific objection on that basis so that the trial court has an opportunity to consider that objection in its ruling. *See Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009); *Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005). Because Vanhoose failed to give the district court that opportunity, he has not preserved that complaint for our review. *See Reyna*, 168 S.W.3d at 179; *see also* Tex. R. App. P. 33.1(a); *Alford v. State*, 495 S.W.3d 63, 66 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

the case and that the police had mistakenly made Vanhoose "the center of the investigation from the very beginning," without conducting "a serious investigation of alternate suspects." Vanhoose further argued that the texts were admissible to show a possible motive for C.L. to "make up a story" or "fabricate things" against her stepfather. The State argued in response that the evidence was more prejudicial than probative. *See* Tex. R. Evid. 403. The district court agreed and excluded the evidence on that basis.

Rule 403 provides that the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "In weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by 'alternative perpetrator' evidence." *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002). "Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator.'" *Id*. "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime." *Id*. at 407. "Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." *Id*.

In this case, it would not have been outside the zone of reasonable disagreement for the district court to find that the balance of Rule 403 factors weighed in favor of excluding the

evidence. The text messages were unquestionably inappropriate and disturbing. In them, Rios discusses his romantic feelings toward C.L., calls her names such as "baby" and "my love," and discusses his desire to "kiss" and "hug" her. In one text, Rios even mentions "holding" C.L. However, none of the messages tend to show that Rios had sexually assaulted or engaged in sexual contact with C.L. at any point in time. Also, even if such an act could be inferred from the messages, Vanhoose was accused of sexually abusing C.L. on multiple occasions over a period of several years. There is no indication in the texts that Rios could have been the perpetrator of the abuse alleged in the indictment. In both her trial testimony and in her interview with CPS, C.L. had identified Vanhoose as the sole perpetrator of that abuse, and there is no contrary evidence in the record that, when combined with the text messages, could support a finding that an alternative perpetrator was responsible for the offenses that C.L. had accused Vanhoose of committing. *See, e.g.*, *Ex parte Huddlestun*, 505 S.W.3d 646, 660–61 (Tex. App.—Texarkana 2016, pet. ref'd) (explaining that "the alternative perpetrator defense typically arises in 'who done it' cases where the complaining witness does not know [her] attacker" or is "unsure" of assailant's identity, not in cases where victim has pre-existing relationship with assailant); *Martinez v. State*, 212 S.W.3d 411, 424 (Tex. App.—Austin 2006, pet. ref'd) (concluding that trial court did not abuse its discretion in excluding evidence that victim's brother might have inappropriately touched and hugged victim because any nexus between brother's actions and charged offenses was "both meager and speculative"). In the absence of any evidence showing the required nexus between Rios and the specific crimes charged, the district court would not have abused its discretion in finding that the probative value of the text messages was outweighed by their prejudicial effect. Because of the disturbing nature of the texts,

7

the district court could have reasonably found that they would have a strong tendency to distract the jury from the central issue before it—whether Vanhoose had sexually abused C.L. as she had claimed—and shift the jury's focus to Rios and his relationship with C.L., even though the evidence had no tendency to connect Rios to the charged offenses.

Finally, to the extent that the text messages might have had some tendency to show that C.L. had a motive to fabricate her allegations against Vanhoose, the district court would not have abused its discretion in finding that its probative value was substantially outweighed by unfair prejudice under Rule 403. As the district court observed, the text messages were largely "one-sided" conversations written by Rios to C.L. C.L. did not respond to many of Rios's texts, and when she did, her replies tended to be brief and vague in nature and thus conveyed little, if any, information regarding her state of mind and motivations around the time of her outcry. For these reasons, the district court did not abuse its discretion in refusing to admit the text messages, and the exclusion of such "marginally relevant" and "highly speculative" evidence did not violate Vanhoose's constitutional right to present his defense. *See Wiley*, 74 S.W.3d at 407–08; *Huddlestun*, 505 S.W.3d at 661–62; *Ruiz v. State*, 272 S.W.3d 819, 830 (Tex. App.—Austin 2008, no pet.); *Martinez*, 212 S.W.3d at 424; *Michaelwicz v. State*, 186 S.W.3d 601, 616–19 (Tex. App.—Austin 2006, pet. ref'd).

**Text messages exchanged between C.L. and her friends**

During trial, CPS witnesses testified that when they spoke with C.L., she was "demure," "withdrawn," "quiet," and "shy." Megan Smith, the forensic interviewer, also testified that C.L. was uncomfortable discussing or describing sexual anatomy and "had a hard time even

8

saying the word porno." Vanhoose characterized this and other testimony as an attempt by the State to present a "false impression" of C.L. as "sexually naive." In an effort to counter that portrayal, Vanhoose offered into evidence Defense Exhibit 1, a series of text messages exchanged between C.L. and her friends and acquaintances, many of which discussed matters of a sexual nature. The State objected, arguing that the texts were inadmissible evidence of the victim's past sexual behavior, and the district court sustained the State's objection.

Specific instances of a victim's past sexual behavior is generally inadmissible at trial. *See* Tex. R. Evid. 412(a)(2). It is admissible only if the probative value of the evidence outweighs the danger of unfair prejudice and the evidence: (1) is necessary to rebut or explain scientific or medical evidence offered by the prosecutor; (2) concerns past sexual behavior with the defendant and is offered by the defendant to prove consent; (3) relates to the victim's motive or bias; (4) is an admissible criminal conviction under Rule 609; or (5) is constitutionally required to be admitted. Tex. R. Evid. 412(b).

Vanhoose argued at trial that the evidence was constitutionally required to be admitted because the exclusion of evidence showing "an alternative basis for a child victim's knowledge of sexual matters" implicates both the Sixth Amendment right of confrontation and the Fourteenth Amendment due process right to a fair trial. *See* U.S. Const. amends. VI, XIV; *Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd). "The Constitution requires, however, only the introduction of otherwise relevant and admissible evidence." *Hale*, 140 S.W.3d at 396 (citing *United States v. Nixon*, 418 U.S. 683, 711 (1974)). "Thus, before evidence of an alleged victim's sexual behavior may be admitted under rule 412(b)(2)(E), the

9

defendant must first establish the relevancy of the evidence to a material issue in the case." *Id.* "If the evidence is not relevant, it is not admissible." *Id.* (citing Tex. R. Evid. 402). "To show the relevancy of a child victim's prior sexual conduct as an alternate source of sexual knowledge, the defendant must establish that the prior acts clearly occurred and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question." *Id.*

Here, the district court would not have abused its discretion in finding that neither requirement was satisfied. The text messages consisted of sex talk between C.L. and a boy, attempts by that boy to exchange sexual photos with C.L., and C.L.'s repeated rejection of those requests. There were also discussions between C.L. and others referring to drug use, sexual history, and claims by C.L. that she had been physically (not sexually) abused in the past. However, there is nothing in the record to establish that the sexual acts described in the texts "clearly occurred" or that they "so closely resembled those of the present case that they could explain [C.L.'s] knowledge about the sexual matters in question." Thus, it would not be outside the zone of reasonable disagreement for the district court to find that the text messages were not relevant to a material issue in the case. *See Hernandez v. State*, 327 S.W.3d 200, 206 (Tex. App.—San Antonio 2010, pet. ref'd); *Hale*, 140 S.W.3d at 396. Moreover, to the extent that the text messages might have had some marginal relevance to the issue of C.L.'s sexual knowledge, the district court would not have abused its discretion in finding that the probative value of the evidence was outweighed by the danger of unfair prejudice. The texts contained numerous references to various extraneous matters, both sexual and non-sexual in nature, that had nothing to do with the facts of the case but could

10

serve only to unfairly prejudice the jury against C.L. and distract the jury from its central task of determining the guilt or innocence of Vanhoose. *See Robisheaux v. State*, 483 S.W.3d 205, 224–25 (Tex. App.—Austin 2016, pet. ref'd). For these reasons, we cannot conclude that the district court abused its discretion in excluding the text messages.

## CONCLUSION

Having found no abuse of discretion in the district court's evidentiary rulings, we overrule Vanhoose's sole issue on appeal. We affirm the district court's judgments of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed

Filed:   February 27, 2019

Do Not Publish

11